IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| JOHNNY FLORES, | ) |
| | ) |
| Plaintiff, | ) No. 1:23-cv-01736 |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| REYNALDO GUEVARA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PROCEED
WITH TWO WITNESS DEPOSITIONS**

**INTRODUCTION**

Plaintiff Johnny Flores, by and through his counsel, respectfully moves this Court to: (a) compel Defendants to provide dates of availability for the depositions of Scott Thurmond and Tony Valdez, and, (b) order that Plaintiff may question those witnesses first at their deposition.

Plaintiff files this motion with a simple request: to apply the Federal Rules of Civil Procedure in straightforward fashion and permit Plaintiff to go forward with the depositions of two third party witnesses he has prioritized for service of deposition subpoenas out of the dozens of witnesses in the case. Scott Thurmond was the central prosecution witness behind Plaintiff's wrongful murder conviction; Plaintiff alleges that Defendants fabricated his identification of Plaintiff. During the investigation, officers also questioned Tony Valdez, a bar owner with knowledge of Thurmond's inebriation and misconduct at the time of the murder.

The central dispute between the parties is questioning priority. Plaintiff's position is that he should get to go first because he subpoenaed Valdez and Thurmond first for deposition; and, even if the equities of each witnesses are considered, both are witnesses Plaintiff will call in his case-in-chief; Plaintiff will be severely prejudiced if they are unavailable for trial (both live out-of-state) and Plaintiff is forced to present at trial deposition testimony in which Plaintiff was not able to question the witnesses first; Thurmond testified against Plaintiff in his underlying criminal case; and Valdez, too, participated in the police investigation and trial.

There is no basis to switch the order of questioning of these witnesses. Defendants' stated position is that "witness alignment" should determine questioning priority of all witnesses across all Guevara cases. However, as Defendants apparently do not dispute, their proposed rule entitles Plaintiff to question both Thurmond and Valdez first, as those witnesses are aligned with the investigation and prosecution of Plaintiff for the underlying murder, and neither is related to Plaintiff, or his counsel, or otherwise "aligned" with Plaintiff as opposed to Defendants.

1

Plaintiff has made every effort to confer with Defendants and reach compromises on both questioning order and timing of these two depositions, but those efforts have not succeeded. More than three months later, Defendants keep moving the goalposts, Defendants refuse to propose deposition dates, all depositions are delayed indefinitely, and the parties are at impasse.

## STATEMENT OF FACTS AND LOCAL RULE 37.2 STATEMENT

**I.    Plaintiff serves Valdez and Thurmond with deposition subpoenas first and seeks to question them first based on first service.**

This case has been ongoing since March 2023, and discovery commenced shortly thereafter.  Dkt. 1. In July 2023, the parties collectively identified over 50 witnesses on their Rule 26 disclosures. To ensure that Plaintiff could timely question two critical third-party witnesses that he intends to call in his case in chief (Tony Valdez and Scott Thurmond), Plaintiff Flores prioritized serving them with deposition subpoenas.

On September 5, Plaintiff provided notice to Defendants of a deposition for witness Valdez, a bar owner questioned by police during the investigation that resulted in Plaintiff's conviction. Group Exh. 1, Correspondence, at 8. Plaintiff served the deposition subpoena on Valdez in Indiana on September 6, for a deposition on November 22.  Group Exh. 2, Deposition Subpoenas, at 3-6.

In addition, beginning in June 2023, and using both internal and external investigators, Plaintiff Flores's counsel made repeated attempts to locate and serve Scott Thurmond, a central third-party witness who was questioned by police during the initial investigation and testified at Plaintiff's criminal trial. Exh. 3, Declaration of Ethan Woodward. Plaintiff was unable to serve Thurmond because he could not locate Thurmond's correct address, which Defendants had not disclosed in their Rule 26(a)(1) disclosures. Exh. 3 at ¶¶3-10; Exh. 1, at 15. On August 28, Defendant Guevara served a notice of deposition for Thurmond (Exh. 1 at 1), disclosing for the

2

first time a Wisconsin address that was previously unknown to Plaintiff Flores (Exh. 3 at ¶¶3-11). Defendant Guevara admitted that Thurmond had not yet been served with a subpoena. Exh. 1 at 4-7, 65-67.[1] Plaintiff thus promptly served Thurmond with a deposition subpoena at the Wisconsin address on September 13 and sent Defendants notice of Thurmond's subpoenaed deposition with proof of service. Exh. 2 at 7-12; Exh. 3 at 15.[2]

Defendant Guevara noticed depositions of third-party witnesses (Gina Cody, Lisa Cody, and Katheline Cody) in the same timeframe, without underlying service. Exh. 1 at 3, 65-67.

Plaintiff informed Defendants that the noticed and subpoenaed dates for Valdez and Thurmond were placeholders, and that, if Defendants were unavailable on those dates, Plaintiff was willing to work with Defendants to ensure that the depositions took place on dates convenient to all. Exh. 1 at 8, 11, 15, 16, 34. Plaintiff repeatedly asked Defendants to provide their availability on the subpoenaed dates and provide alternatives. *Id.*

## II. Defendants lodge an across-the-board objection to all Guevara case depositions and claim that "witness alignment" should dictate questioning priority.

Defendants did not provide their availability or propose alternatives for Plaintiff's subpoenaed depositions of Valdez and Thurmond. Rather, in early September, Defendants, along with the defendants in other recent Guevara cases (represented by the same sets of counsel for the City and its officers), lodged an across-the-board objection to all of the depositions subpoenaed and noticed in August and September 2023 by eight Guevara plaintiffs in seven

---

[1] It took the defense three months to finally disclose on November 20 that Thurmond had not been served at any time by Defendants. Exh. 1 at 66-67; *see also* Exh. 1 at 4, 22, 25, 65 (Plaintiff's repeated requests). The Guevara Defendants also did not provide proofs of service for deposition subpoenas that they had served until November 20. Exh. 1 at 4, 22, 25, 65, 66-67.
[2] The Flores Defendants noticed other third-party depositions in the same timeframe without any indication of underlying service; for example, they noticed depositions on August 28 for Gina Cody, Lisa Cody, and Katheline Cody. Exh. 1 at 3-4.

3

cases.³ Exh. 1 at 9-10, 14, 16, 17-18. The Guevara Defendants claimed that the depositions of Valdez and Thurmond could not go forward because they disputed—across all seven cases—that the Guevara Plaintiffs were entitled to question first witnesses Plaintiffs had served first. *See id.*

Plaintiff Flores, along with the other Guevara Plaintiffs, explained that he was entitled to question first Valdez and Thurmond, whose testimony he had prioritized, to meet his burden to prove his claims. Exh. 1 at 25, 11-12, 15, 29. Plaintiff explained his position that service of a deposition subpoena determined questioning priority, and that he had served Valdez and Thurmond first. *Id.* Plaintiff further explained that even if the equities of each witness were considered individually, they weighed in his favor, as he had (a) attempted to serve, and served, the witnesses first: (b) Plaintiff intended to call both witnesses in his case-in-chief in light of his burden of proof; (c) doing so would aid the jury's comprehension of the evidence at trial should the witnesses become unavailable – particularly given that Thurmond and Valdez both lived out of state and could not be compelled to appear for trial and thus use of their deposition transcripts was likely, and (d) these third party witnesses had been questioned by police during the investigation into the murder for which Plaintiff was wrongfully convicted and testified at Plaintiff's trial, and neither were related to Plaintiff or his counsel.⁴ Exh. 1 at 25, 11-12, 15, 29.

---

³ The seven Guevara-related lawsuits are for the following Plaintiffs: (1) Gamalier Rivera, (2) Eruby Abrego, (3) John Martinez, (4) Juan & Rosendo Hernandez, (5) Edwin Davila, (6) Julio Lugo, and (7) Johnny Flores.

⁴ On September 5, the Guevara Plaintiffs offered a compromise: if the Guevara Defendants agreed to permit the Guevara Plaintiffs to question first at the depositions they had served and noticed first, then the Guevara Plaintiffs would agree that the Guevara defendants could question first at the depositions Defendants had noticed first (but so far had not served). Exh. 1 at 29, 7. To be clear, as discussed below at footnote 5, Plaintiff does not believe that mere service of a deposition notice determines the order of deposition questioning, nor is that Defendants' position either (Exh. 1 at 29, 14, 60). But as a global compromise to resolve this issue across the cases, Plaintiff was willing to abide by this approach so that Defendants could have priority over a set of third party witnesses they noticed before Plaintiff had served or noticed them. Exh. 1 at 29, 7. Defendants rejected this compromise. Exh. 1 at 29.

Defendants articulated their view that "witness alignment," and not service of a deposition subpoena or notice of a deposition, should dictate questioning priority across all Guevara cases. Exh. 1 at 29, 14, 60. Despite requests, Defendants refused to identify which depositions served and noticed by the Guevara Plaintiffs they objected to on "witness alignment" grounds, including whether that included Valdez or Thurmond. Exh. 1 at 16, 19-20, 22.

**III.   Defendants refuse to proceed with Thurmond and Valdez's depositions absent an across-the-board agreement on depositions in all seven Guevara cases.**

Defendants refused to proceed with any depositions without a global agreement. E.g., Exh. 1 at 16, 19, 20, 22. The parties thus exchanged emails and conferred for an additional two months. Exh. 1 at 22-75. Defendants first insisted on an exchange of lists of served and/or noticed witnesses on which each party claimed questioning priority. Exh. 1 at 22, 29. Plaintiff expressed concern that the exchange would serve only to delay but agreed to proceed as Defendants wanted. Exh. 1 at 29. The parties exchanged lists on October 11. Exh. 1 at 30-33.

Defendants did not make themselves available for a conference to negotiate over the lists until October 19. Exh. 1 at 30, 34-35. Anticipating more delay, Plaintiff had asked Defendants in advance to be ready to negotiate. Exh. 1 at 36. Yet on the call, even though the Guevara Plaintiffs proposed trades, the Guevara Defendants requested more time to confer internally. Exh. 1 at 37.

After more defense delay (Exh. 1 at 36, 38, 39), on October 27, Defendants finally responded, but rather than offer specific compromises, proposed an entirely different process: a draft, during which the parties would alternate requests for depositions that Plaintiff had prioritized for service, without regard for Plaintiff's timely service of subpoenas for witnesses key to their case-in-chief, and also without regard for "witness alignment," which Defendants claimed should govern deposition questioning. Exh. 1 at 40. At a November 7 call, the Guevara Plaintiffs objected to the draft proposal as prejudicial; Defendants finally agreed to commence

5

witness-specific negotiations; and the parties exchanged some proposals. *See* Exh. 1 at 46-51.

After more defense delay (Exh. 1 at 48, 52, 54, 56), the parties conferred again; Plaintiffs proposed certain trades and the parties agreed to exchange additional written proposals. Exh. 1 at 60-64. Defendants offered a single global resolution in their November 17 proposal. Exh. 1 at 60-61. The Guevara Plaintiffs provided a global resolution, as well as numerous individual case resolutions. Exh. 1 at 62-64; *see also id.* at 49. After additional delay (*see* Exh. 1 at 68, 72-74), the Guevara Defendants finally responded with a blanket rejection, indicating that they would not agree to any of Plaintiffs' global or case-specific compromises, declining to counter, and declaring impasse. Exh. 1 at 75.

**IV.     Defendants have not claimed either Valdez or Thurmond for their side.**

Notably, none of the parties' proposals have allocated Valdez and Thurmond to Defendants for questioning priority, and thus, from Plaintiff's perspective, there does not appear to be any dispute regarding those two witnesses. Plaintiff Flores's proposed compromise has been: "Plaintiff goes first as to Tony Valdez and Scott Thurmond; Defendants go first as to Katheline Cody, Gina Cody, and Lisa Cody." Exh. 1 at 49; *see also id.* at 30 & 63 (same).

For their part, Defendants have not claimed Valdez or Thurmond in their proposals. *See* Exh. 1 at 61 (offering that Plaintiffs could depose Thurmond, and further allotting Valdez, who Plaintiff Flores noticed first, to Plaintiff); Exh. 1 at 29 & 33 (Defs.' list stating that they wanted questioning priority over Katheline Cody, whose deposition Plaintiff had also noticed). Nor have Defendants provided any argument that Thurmond and Valdez—third-party witnesses, with no connection to Plaintiff, that were both questioned during the initial police investigation—are "aligned" with Plaintiff. *See* Exh. 1. Defendants nonetheless refuse to allow Plaintiff to question Valdez and Thurmond first, absent a global agreement on depositions in seven cases.

## V. Defendants have refused to provide a timeline for when they agree Valdez and Thurmond may be deposed.

Defendants have also stated vaguely, with respect to all depositions across all of the Guevara cases, that those cannot proceed "until we obtain the documents necessary for us to examine these witnesses from entities such as the State's Attorney, defense attorneys, Cook County Clerk and Court Reporters." Exh. 1 at 31-32. In response, Plaintiff has repeatedly explained that he was amenable to Defendants' thoughts regarding when to conduct the specific depositions of certain individual witnesses, but that he would not agree to indefinitely delay all depositions given how long this case has been in discovery and Defendants' delay or failure to seek discovery that they now claim is required for depositions. Exh. 1 at 16, 34. To date, Defendants still have not identified specific depositions that they insist should be delayed, or provided particular reasons, or offered their own proposed timeframe for the depositions. Nor have they responded to Plaintiff's plea:

> [A]s we have indicated repeatedly, we are willing to work with you as to dates, but we need your cooperation in disclosing availability, regardless of who questions first at the deposition. To that end . . . please propose at least two dates on which Defendants are available for each deposition noticed by Plaintiff, **in the timeframe that they propose each deposition should be conducted**.

*Id.* at 34. Instead, the Guevara defendants have simply helped themselves to a multiple-months-long delay in proceeding with depositions.

## DISCUSSION

Plaintiff served Valdez and Thurmond first, and thus he should be allowed to question them first. In addition, the equities clearly favor Plaintiff questioning these two witnesses first, as both Valdez and Thurmond are witnesses Plaintiff will call in his case-in-chief; Plaintiff will otherwise be severely prejudiced at trial if they are unavailable (both live out-of-state and are of more advanced age); both witnesses were interviewed by the police during the investigation into

7

the underlying murder trial and Plaintiff's criminal trial; and Thurmond, in particular, is the central eyewitness who implicated Plaintiff in a line-up and now refuses to talk to Plaintiff's counsel while friendly to Defendants' counsel. Every legal principle that potentially applies here justifies Plaintiff questioning these witnesses first. Accordingly, this Court should compel Defendants to provide dates of availability for the depositions of Valdez and Thurmond without further delay; and affirm that Plaintiff may question those deponents first at their depositions.

I. **Plaintiff served first, and so should be permitted to question the witnesses first.**

There is no dispute that Plaintiff served Valdez first and is the only party to have noticed Valdez's deposition. Exh. 2 at 1-6. Plaintiff also diligently attempted to serve Thurmond first, beginning in June 2023 (Exh. 3 ¶¶3-12), and served Thurmond first, immediately after Defendants disclosed their knowledge of an updated address for Thurmond previously omitted from their Rule 26(a)(1) disclosures (Exh. 3 at ¶¶3-12; Exh. 2 at 7-12). Defendants noticed Thurmond's deposition on August 28, but did not serve him. Exh. 1 at 4-7, 65-67.[5]

---

[5] No party argues in this litigation that first notice should dictate. If notice controlled, then in each case a party could simply send out a notice for all of the important witnesses in the case and go first. Taken to its extreme, it would be a race to see which party was quicker to push "Send" after completing the Rule 26(f) conference, or perhaps which party's packets of email data happened to traverse the internet faster. In addition, parties could send out notices and hold them without service, indefinitely delaying discovery. In Plaintiff's view, this would not be the favored approach. *See* Fed. R. Civ. P. 26, 1970 Committee Comments ("This new provision is concerned with the sequence in which parties may proceed with discovery and with related problems of timing. . . A priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects. . . . . Subdivision (d) is based on the contrary view that the rule of priority based on notice is unsatisfactory and unfair in its operation."); *Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. 2013) ("Under the federal rules, a discovery priority is not established based upon which party noticed a deposition first."); *U.S. v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill. 1986) ("[I]t is clear that the priority rule, which confers priority on the party who first serves notice of taking a deposition, is abolished by Rule 26(d).").

Moreover, the Guevara Defendants rejected the Guevara Plaintiffs' offer—purely for purposes of a global compromise, not based on governing law—that the parties agree on a global basis that first notice governs deposition priority. Exh. 1 at 29.

Plaintiff's position is simple: for these two witnesses that he has prioritized for service first, and successfully served first, he should be able to question them first. Courts adjudicating similar disputes have appropriately rewarded the diligence of the party that has gone out and perfected service of a subpoena on a witness, allowing them to question first. *See, e.g., Occidental Chem. Corp. v. OHM Remediation Services*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996) (holding that where two subpoenas were served, the first served took priority). That is the simple principle that Plaintiff seeks to apply here, and on that basis alone the motion should be granted.

**II.     The equities favor Plaintiff questioning Valdez and Thurmond first.**

Even applying a witness-by-witness consideration of the equities, Plaintiff should get to question Valdez and Thurmond first. First, Plaintiff bears the burden of proof, and intends to call both in his case-in-chief at trial, cross-examining them where necessary about their past statements procured during Defendants' police investigation. Federal Rule of Civil Procedure 30(c) dictates that "[t]he examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Fed. R. Civ. P. 30(c)(1). On this basis as well, Plaintiff should be permitted to question these witnesses first.

Second, allowing Plaintiff to question the witnesses first will aid the jury's comprehension of the evidence at trial. In the event that these witnesses are unavailable for trial, their deposition testimony will be read at trial in lieu of live testimony. If Defendants have questioned first, and Plaintiff second, then the testimony will be backwards and will need to be heavily edited for trial. In Plaintiff's experience, a deposition in which Defendants question first, eliciting the witness's testimony after long periods of questioning on background and other extraneous matters, and in non-chronological order, after which Plaintiff follows up with questions afterwards, will create a transcript that is disjointed and confusing to the jury.

9

Here, both Valdez and Thurmond are likely to be unavailable at trial, and thus their deposition testimony is likely to be what the jury hears. Both are located out of state, and thus cannot be compelled to appear at trial. In addition, this case arises from a 1989 murder investigation, and the more advanced age of these witnesses, who are in their 60's and 70's, and potential memory issues, also raise serious concerns about potential unavailability at trial. For his part, Mr. Thurmond appears to move across state lines regularly, further increasing the likelihood of his unavailability for trial. *See* Exh. 3, at ¶¶3-12.

Plaintiff should have the opportunity to examine Thurmond at his deposition to lay out the "story" of Thurmond's presence with the victim on the night of the murder, his state of inebriation at the time, his subsequent interactions with the police, and how he came to implicate Plaintiff in the murder—as would occur at trial if Thurmond was available. The same applies to Valdez, a bar owner who interacted with Thurmond at trial and was interviewed by police during their investigation. If Plaintiff is unable to question first, he will be severely prejudiced, effectively prevented from presenting critical testimony to the jury in a clear and coherent fashion during his case-in-chief.

In such circumstances, judges in this District have repeatedly allowed plaintiffs to question third party witnesses first, even when they have not first served them or noticed their depositions. *E.g.,* Group Exhibit 4, *Walker v. Burge*, No. 21 C 4231 (N.D. Ill.), Dkt. 222 (joint statement of dispute) & Dkt. 223 (Order of July 7, 2023); Group Exhibit 5, *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), Trans. Of March 12, 2013 Hrg. & Dkt. 54 (Order of March 12, 2013). In *Rivera,* Judge Rowland specifically focused on the plaintiff's burden to prove his case and on the importance of the third-party witness at issue over all other collateral issues. Exhibit 5, at 14:10-12 (finding that despite the fact defendants first served the deposition subpoena, the Court

was "really concerned that [Plaintiff] has the burden [] and [this witness was] going to be probably the most important witness in the case."). Accordingly, even using Defendants' preferred "witness alignment" rule, Plaintiff should get questioning priority.[6]

Third, both Valdez and Thurmond are aligned with the investigation of Plaintiff, as they each participated in the police investigation against Plaintiff and testified at Plaintiff's criminal trial. Moreover, neither Valdez nor Thurmond is related to, or has any preexisting relationship with, Plaintiff or his counsel. Critically, Thurmond is the sole eyewitness to the murder, and his implication of Plaintiff is the critical piece of evidence that Plaintiff alleges Defendants fabricated to secure his wrongful conviction. *See* Dkt. 1 at ¶¶58-60, 22-41, 52-57. Thurmond is also hostile to Plaintiff and he has refused to speak with Plaintiff's counsel during this litigation while simultaneously agreeing to speak with Defendants' counsel. If questioning proceeded in the contrary order—as Defendants would have it—not only would the testimony be impossible to use at trial, but it would also unfairly provide Defendants the opportunity to elicit their own theory of the case from a friendly witness before Plaintiff has any opportunity to subject that story to scrutiny. All of these are additional recognized reasons to let Plaintiff question them first at their depositions. *See Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) ("[T]he party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about the matter.").

---

[6] Indeed, this dispute is being litigated across the various cases involving Defendant Guevara that were filed in early 2023, and Plaintiff's counsel is filing nearly identical motions in most of those cases seeking questioning priority as to a narrow set of third-party witnesses that Plaintiffs subpoenaed first, including witnesses that are out-of-state, move regularly, and/or are of advanced age.

11

Finally, we note that Plaintiff's and Defendants' counsel in this case have all litigated against each other in many other cases. And it is true that in various cases, the attorneys on both sides of this case have taken contrary positions on this issue. *See, e.g.*, *Reyes v. Guevara*, No. 18 C 1028 (N.D. Ill.) (Dkt. 140) (the law firms representing the Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, and the law firm representing Plaintiff in this case arguing that the equities favored Plaintiff questioning first; Defendants' counsel prevailed); Group Exh. 5, *Rivera v. Guevara*, No. 1:12-cv-04428 (N.D. Ill.), at 30-34 (Dkt. 51 & Trans. of March. 12, 2013 Hrg.) (the law firms representing Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, Plaintiff's counsel in this case arguing that the equities favored plaintiff questioning first; Plaintiff's counsel prevailed); Group Exh. 4, *Walker v. Burge, et al.*, No. 21 C 4231 (N.D. Ill.) (Dkts. 222 & 223) (the law firms representing Defendants in this case insisting they should get to question first because they communicated an intention to take the deposition first, and Plaintiff's law firm arguing that the equities favored Plaintiff questioning first; Plaintiff's counsel prevailed). This history between counsel merely highlights two points: (1) because counsel for the Guevara plaintiffs and the Guevara defendants have argued that service should be the primary factor in deciding which party gets to question a witness first, as Plaintiff has proposed here, Plaintiff should get to question these witnesses first; and (2) even applying the equities, Plaintiff should get to question these witnesses first.

**III.     Defendants' abandoned proposal of a draft is prejudicial and unworkable.**

Defendants' since-abandoned demand that the parties simply engage in a back and forth "draft" to pick witnesses prejudices Plaintiff and is unfair. As discussed above, such a process does not follow any of the frameworks discussed above, and instead throws them all out the window in favor of a tit-for-tat process that will inevitably result in Defendants being able to take

depositions first of witnesses that Plaintiff served first, and for whom the equities strongly favor Plaintiff being able to question first. Notably, Plaintiff prioritized for depositions and moves here only with regard to two witnesses that he intends to call in his case in chief, who both participated in the police investigation and criminal trial. They are each appropriately questioned first by him. Defendants' draft proposal would allow Defendants to inevitably ask questions first of witnesses critical to Plaintiff's prosecution that are out of state or are otherwise likely to be unavailable at trial, which would irredeemably prejudice Plaintiff in presenting his case to the jury. Defendants' proposed draft also presupposes that each side will take the same number of depositions, but in these wrongful conviction cases, plaintiffs almost always take more depositions because they have the burden of proof and are the ones who need to develop evidence of constitutional misconduct. There are also many categories of witnesses over whom the parties almost never have disputes: for example, defense counsel has historically agreed that plaintiffs can go first with third party officers with limited involvement in the homicide investigation, and plaintiffs have historically agreed that defendants can go first with defense attorneys and damages witnesses. A draft would merely create opportunity for gamesmanship.

It also bears mentioning: the approach Plaintiff has taken is measured, and allows each party to identify critical witnesses and pursue their depositions. Plaintiff did not go out and serve everyone or insist that he should get to go first with every critical witness. Instead, he identified two witnesses that he felt were critical to his case to prioritize for service.

**IV.    Defendants should not be permitted to indefinitely delay depositions.**

Plaintiff is also concerned that this dispute has become a process of endless delay. Plaintiff subpoenaed these depositions in September 2023. When Defendants objected, Plaintiff agreed to confer but repeatedly requested that the process move expeditiously so depositions would not be delayed. Instead, the process has now dragged on for three months, as Defendants

13

have continuously moved the goalposts during the conferral process—preventing the narrowing of disputes but ensuring additional delay.

There is also no basis for this sequencing of depositions after Defendants unilaterally decide they are satisfied that they have all the documents they want—particularly when Defendants have had the opportunity to pursue subpoenas for months but have not timely done so. "Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interest of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). Plaintiff has repeatedly offered to work with Defendants in scheduling the deposition in their preferred timeframe, but there is no basis to further delay the depositions of Valdez and Thurmond based on unspecified discovery in the case, nor have Defendants specified one despite repeated requests. Exh. 1 at 16, 34. This case was filed in March 2023. Plaintiff has produced the criminal trial record, transcripts, police reports and witness statements. The City has produced its homicide investigation files. There is no reason depositions of third parties cannot proceed. If Defendants wanted additional documents via third party subpoenas, they could have issued those subpoenas months earlier. Because of this pending dispute, no depositions have yet occurred in this case. There is much to do, and the parties should get started now.

## CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court compel Defendants to promptly provide dates on which the subpoenaed depositions of Valdez and Thurmond can proceed and order that Plaintiff may question those witnesses first at the depositions.

DATED: December 6, 2023

RESPECTFULLY SUBMITTED,

**JOHNNY FLORES**

By: /s/ Ruth Brown

*One of Plaintiff's Attorneys*

## CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, certify that on December 6, 2023, I filed the foregoing Motion using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Ruth Brown

*One of Plaintiff's Attorneys*