IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| KEITH WALKER, ) | |
| ) | |
| Plaintiff, ) | Case No. 21 C 4231 |
| ) | |
| v. ) | District Judge John F. Kness |
| ) | |
| ADMINISTRATOR OF THE ESTATE ) | Magistrate Judge Gabriel A. Fuentes |
| OF FORMER CHICAGO POLICE ) | |
| DEPARTMENT COMMANDER ) | |
| JON BURGE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**THE PARTIES' JOINT MOTION FOR LEAVE TO DEPOSE
MARCUS BELL, AN INCARCERATED WITNESS AND TO RESOLVE CERTAIN
ISSUES RELATING TO THIS DEPOSITION**

The parties, by their respective undersigned counsel, pursuant to Fed. R. Civ. P. 30(a)(2)(B), respectfully move this Court for an order granting them leave to depose an incarcerated witness, Marcus Bell, extend the time allowed for this deposition, and to resolve the disagreement between the parties on which party should be allowed to initiate the questioning of Mr. Bell. In support of this motion, the parties state as follows:

1. In this lawsuit, Plaintiff, Keith Walker, claims he was wrongfully convicted of the 1991 murder and attempted armed robbery of Shawn Wicks.

2. Marcus Bell, one of Walker's three co-defendants in those criminal proceedings, signed a statement confessing to his involvement that also implicated Walker in the crime, pleaded guilty to the murder and attempted armed robbery of Wicks, and has discoverable information regarding the events described in the complaint. He was disclosed as a witness by all

Exhibit 4 at 001

parties pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i).

3. The disclosure of Mr. Bell by Plaintiff indicated that Mr. Bell was incarcerated at the Danville Correctional Center. As of the filing of this motion, Mr. Bell is still currently incarcerated within the Illinois Department of Corrections at the Danville Correctional Center, 3820 W. Main Street, Danville, Illinois and his IDOC prison inmate number is B62100.

4. Federal Rule of Civil Procedure 30(a)(2)(B) requires leave of court to depose an individual confined in prison.

5. On March 27, 2023, counsel for Defendant Officers circulated to all counsel of record a draft of a motion seeking leave of court to depose Mr. Bell to determine if the motion could be filed as unopposed. Prior to that day, no party disclosed an intent to depose Mr. Bell.

6. Counsel for Plaintiff responded the next day that he "did not object in principle to this motion" but that he had concerns about scheduling, who will question the witness first, and the allotment of time for questioning between the parties. The parties then conferred, pursuant to Rule 37, on March 29, 2023 and continued to confer thereafter in an attempt to resolve disagreements relating to this deposition and to further address their respective concerns. The parties have reached agreement as to some of these issues relating to Mr. Bell's deposition, but are at an impasse as to others, as set forth below.

7. The parties agree to the scheduling of Mr. Bell's deposition over the course of 2 days and that Plaintiff and Defendants (combined) should be allowed equal time to depose Mr. Bell. The parties disagree regarding (1) who should be allowed to question Mr. Bell first and (2) how much time should be allotted to complete Mr. Bell's deposition. The parties further agree that they will work together to schedule this deposition, and because of the limitations for in-person depositions at Danville Correctional Center, intend to secure two consecutive dates for Mr. Bell's

Exhibit 4 at 002

deposition and agree that counsel for the City and Defendant Byrd will attend remotely if the prison cannot accommodate the presence of counsel for each party in their facility for the deposition.

**The Parties Disagreement over Order of Questioning**

8. With respect to the order of questioning, the parties' respective positions are as follows:

**Plaintiff's position:**

9. Plaintiff's position is that he should have the opportunity to question Mr. Bell first, given the significance of this third-party witness's testimony. Mr. Bell's purported statement to Defendants was a critical piece of evidence that led to Plaintiff's arrest and his eventual wrongful conviction. Mr. Bell later recanted his statement and testified under oath that he falsely implicated Plaintiff because he was coerced by Defendants. There are several reasons that Plaintiff should be permitted to question Mr. Bell first.

10. First, Mr. Bell is a crucial third-party witness who implicated Plaintiff and helped to cause his wrongful conviction, at the behest of Defendants. Mr. Bell was therefore adverse to Plaintiff in his criminal case, and Plaintiff should be given the first opportunity to question Mr. Bell. The fact that Mr. Bell is properly viewed as hostile to Plaintiff is a recognized reason to let Plaintiff question Mr. Bell first at his deposition. See *Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013 ("[T]he party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about the matter.").

11. Second, Plaintiff bears the burden of proof in this case, and because Mr. Bell is a central witness who gave a statement to CCSAO implicating Plaintiff in this shooting of Shawn Wicks, Plaintiff intends to call him in his case-in-chief at trial and cross examine him about

Exhibit 4 at 003

whether his statement was false and whether it was manufactured by Defendants. Federal Rule of Civil Procedure 30(c) dictates that "[t]he examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Fed. R. Civ. P. 30(c)(1). Federal Rule of Evidence 611 provides that this Court has discretion to control the mode and order of examination of witnesses. Fed. R. Evid. 611. Similarly, Federal Rule of Civil Procedure 26(d) authorizes the Court to order the sequence of discovery. Fed. R. Civ. P. 26(d), Advisory Committee Notes to 1970 Amendment ("The court may upon motion and by order grant priority in a particular case."). See generally *Occidental Chem. Corp. v. OHM Remediation Services*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996); *Smith v. Logansport Community Sch. Corp.*, 139 F.R.D. 637, 642 (N.D. Ind. 1991). Rule 26 provides that, "Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence []." Fed. R. Civ. P. 26(d)(3). The fact that Defendants first signaled that they wanted to depose Mr. Bell does not direct the order in which the deposition should occur, and the Court is vested with authority to direct deposition priority. That this key witness will be called in Plaintiff's case-in-chief is alone reason to let Plaintiff question him first at a deposition.

12. Third, and relatedly, Plaintiff should be allowed to question Mr. Bell first because it will aid the jury's comprehension of the evidence at trial. In the event that Mr. Bell is unavailable for trial (as he might be - given the passage of time, his inability to be controlled by either side, and his recurrent detention in IDOC over approximately the last 30 years), his deposition testimony may be read at trial in lieu of live testimony. If Defendants have questioned first, and Plaintiff second, then the testimony will be backwards and will need to be heavily edited for trial.

Exhibit 4 at 004

13. In *Rivera v. Guevara*, Judge Rowland ruled that the plaintiff was entitled to question a key witness first under similar circumstances. See *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.) (Order of March 12, 2013) (A transcript of the ruling in this matter is attached as Exhibit A). Like Mr. Bell, the witness in *Rivera* recanted his prior identification and statements implicating the plaintiff. *See* Ex. A, at 7-9. As with Mr. Bell, in *Rivera*, defendants noticed the witness first, but plaintiff informed defendants they intended to question the witness first. Id. at 12. As with Mr. Bell, the parties did not know whether the witness would be available for trial. Id. at 7. As with Mr. Bell, the defendants protested that the plaintiff had his opportunity to question the witness and defendants had not. Id. at 11-12.

14. In *Rivera*, Judge Rowland ruled that the plaintiff could go first. *See* Ex. A at 14:10-12 (finding that despite the fact defendants first noticed the deposition, the Court was "really concerned that [Plaintiff] has the burden [] and [this witness was] going to be probably the most important witness in the case."). Judge Rowland was not persuaded by defendants' counsel repeated concerns that the plaintiff's counsel may have communicated with the witness. Id. at 11:4-8 ("We don't know how many times they get together and talk with [the witness]. But what we do know [] they come up with an affidavit that they use in the post-conviction." Instead, Judge Rowland specifically focused on the plaintiff's burden to prove his case and on the importance of the third-party witness at issue over all other collateral issues. This Court should similarly prioritize Plaintiff's burden and Mr. Bell's importance as the key third-party witness when determining which party gets to ask questions first.

15. Fourth, there is really no equity in permitting Defendants to go first because they circulated the first draft of this motion. Plaintiff was in the process of coordinating Mr. Bell's deposition at the time the Defendants provided Plaintiff with their draft. Plaintiff informed

Exhibit 4 at 005

Defendants of that fact during the Rule 37 conference on that subject. Plaintiff was coordinating with Danville Correctional Center to schedule Mr. Bell's deposition when he received Defendants' motion with a request to make it a joint motion.

16. The parties have not been able to reach agreement on the issue of priority of questioning at Mr. Bell's deposition. Defendants have taken the position that because they communicated their desire to depose Mr. Bell first, they should be allowed to go first at Mr. Bell's deposition. But the Rules make clear that "[t]here is no longer any fixed rule for priority of discovery scheduling—no first come, first served rule applies." *Kitchen v. Burge*, No. 10 C 4093 (N.D. Ill.) (order of February 15, 2012) (A copy of this order is attached as Exhibit B); see also Fed. R. Civ. P. 26(d), Advisory Committee Notes to 1970 Amendment (stating that conferring priority to the party that first serves notice "is unsatisfactory" and discussing practical problems with such an approach). Accordingly, in *Kitchen v. Burge*, supra, Judge Valdez ruled that the plaintiff was entitled to question a key witness first even though the defendants were the first to serve the witness.

17. Defendants will not suffer prejudice if Plaintiff is allowed to question Mr. Bell first. On the contrary, Plaintiff's position is that conducting the initial questioning would be more effective, as Mr. Bell's testimony is expected to provide crucial evidence for the claims raised in Plaintiff's complaint. Indeed, the questioning by Plaintiff's counsel may lay the groundwork for the subsequent questioning by Defendants.

18. Furthermore, like in *Rivera* where the Judge Rowland did not order plaintiff's counsel not to ask leading questions (Ex. A at 15-18), Plaintiff here believes that any request to do so is unnecessary and without legal basis, especially considering the witness is potentially adverse. Not only was Mr. Bell clearly adverse to Plaintiff when he signed the statement

implicating Plaintiff in a crime, but as Mr. Bell indicated in his 2021 affidavit, he is likely to be still adverse to Plaintiff today. (Attached as Exhibit C). Mr. Bell's affidavit details how defendants physically abused him when he initially refused to implicate Plaintiff. Mr. Bell did not testify on Plaintiff's behalf at his criminal trial because he was adverse to Plaintiff. Furthermore, Mr. Bell's affidavit indicates that he took a guilty plea because Plaintiff (and another co-defendant) had already been found guilty. Despite the fact that Mr. Bell has recanted his prior statements, there is a high probability that he is still adverse to Plaintiff given representations made by defendants while Mr. Bell was in their custody and the resulting outcome of criminal proceedings instituted against Mr. Bell and his co-defendants that were based upon false confessions coerced by defendants.

19. For the reasons above, this Court should rule that Plaintiff should be permitted to question Mr. Bell first at his yet to be scheduled deposition.

**Defendants' position:**

17. There is no dispute that Defendant Officers were the first party to make known to all counsel that they were filing a motion to depose an incarcerated person (Bell) and asked if there was any opposition. As Defendant Officers' made clear in a response email and at the Rule 37 conference, it is their position that because they were the first party to initiate proceedings to take Mr. Bell's deposition (having inquired and coordinated with the prison and then initially raising their intent to file the instant motion with the other parties), they are entitled to question Mr. Bell first as is standard practice, which despite Plaintiff's assertion to the contrary, is still a recognized and utilized method of practice. *See Lumpkin*, 2013 WL 1343666, at *1 ("Generally, it is understood that the party who notices a deposition will have priority in asking questions"); *See also* Ex. A, *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.) (Order of March 12, 2013), at 14:9-10

("You noticed it up. It is kind of a first come, first serve in this world…"). Otherwise, discovery depositions would devolve into a constant battle over who is allowed priority of questioning. *See e.g.* Ex. B, *Kitchen v. Burge*, No. 10 C 403 (N.D. Ill.) (order of February 15, 2012), p. 2 ("Generally, in order to foster cooperation among counsel, the Court would expect that the party who serves notice first gets to have that noticed complied with by all.").

18. Plaintiff's attempt to paint Mr. Bell as adverse to him is false. Although Marcus Bell, one of Plaintiff's co-defendants who pled guilty to the crime, is a key witness in the arrest and identification of Plaintiff as the individual who shot Mr. Wicks, Mr. Bell did not testify in any proceeding against Plaintiff and has since recanted his confession via multiple affidavits (obtained in 2016 and 2021 and attached to Plaintiff's petition for certificate of innocence), as produced by Plaintiff's counsel in this litigation. *See* Ex. C, Marcus Bell's 2016 and 2021 Affidavits. As such, Mr. Bell is a crucial witness to the defense due to his purported recantation, but also because it appears he had some contact with Plaintiff and/or his agents prior to this lawsuit, and favorable evidence to Plaintiff obtained from Mr. Bell was used by Plaintiff in his post-conviction and certificate of innocence proceedings.

19. Due to the recantation and Mr. Bell's claims that Defendant Officers forced Mr. Bell into implicating Plaintiff, Mr. Bell is an adverse witness to the Defendants – not Plaintiff - and Defendants should be entitled to question him first at his deposition so that they can question the sufficiency of the recantations which includes allegations of coercion that were never previously adjudicated as Mr. Bell withdrew his motion to suppress his statement during the criminal proceedings.

20. Plaintiff's assertion that Mr. Bell was adverse to Plaintiff during his criminal case is not only irrelevant since he did not testify at his criminal proceedings, it is also factually

**Exhibit 4 at 008**

incorrect for the present analysis. The salient inquiry is how the witnesses are aligned in the *instant* litigation. Mr. Bell is clearly not adverse to Plaintiff in this case. First and foremost, Mr. Bell is not an adverse witness to Plaintiff in these proceedings because Mr. Bell's recantation was evidence that assisted Mr. Walker during his postconviction proceedings. Mr. Bell now claims his initial confession implicating himself and Walker in the Wicks homicide was coerced. *See* Ex. C. As such, although Mr. Bell's initial confession (a confession that was not used as evidence to convict Mr. Walker) may in only the most general sense have made Mr. Bell adverse to Plaintiff in the early 90s during the time of the criminal proceedings, that fact certainly does not change that now, 32 years later, Mr. Bell is clearly aligned with Plaintiff's claims in this civil case. In fact, Mr. Bell provided crucial favorable evidence to Plaintiff in his efforts to overturn his conviction and to obtain a certificate of innocence highly contested evidence that Plaintiff will surely seek to introduce at trial as evidence of his "actual innocence" of the murder of which he was convicted.

21. Next, Plaintiff's contention that he intends to introduce Mr. Bell's testimony in his case-in-chief against the Defendant Officers to support his "burden of proof" is not a legitimate basis for him questioning Mr. Bell first at the deposition. Indeed, this fact only further supports Defendants' position that they should be allowed to question Mr. Bell first. It is opposing counsel who has priority in questioning another party's witness. *See Lumpkin*, 2013 WL 1343666, at *1 ("Generally, it is understood that the party who notices the deposition will have priority in asking questions, **and that opposing counsel will have priority to question the other side's witnesses.**") (emphasis added). In addition, Defendant Officers should be allowed to question this witness first because Plaintiff is the party who generally knows what Mr. Bell's testimony will be. *Id*. at *1 (Opposing counsel has priority of questioning another side's

Exhibit 4 at 009

witnesses… "because the party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about this matter."). Indeed, it appears that Plaintiff (or someone working on his behalf) secured Mr. Bell's 2016 and 2021 affidavits that recant his confession claiming it was due to purported misconduct by the Defendant Officers (Ex. C), and Plaintiff intends to present that very same testimony at a trial in this case. Clearly then, Plaintiff knows what this witness will testify to in this case and because of this, case law dictates that Defendant Officers should be allowed to question this witness first to find out what the witness knows about this matter. *Id.*

22. Third, Plaintiff's burden of proof argument, which he then links to jury comprehension, is premised on the faulty assertion that he should be allowed to question Mr. Bell first because he is likely to be unavailable for trial. However, there is no indication that Mr. Bell is not or will not be within the subpoena power of this Court (i.e. a local witness). According to the Illinois Department of Corrections website, Mr. Bell has been in prison on his current charge since 2006, his projected parole date is listed as December 7, 2023, but his projected discharge date is listed as "3 YRS TO LIFE – TO BE DETERMINED," which means that for at least three years and possibly for the rest of his life, Mr. Bell will be required to reside in Illinois and will be subject to Illinois' rules of parole even after his release from prison. (*See* Ex. D.) Moreover, due to the nature of the conviction for which Mr. Bell is currently incarcerated, he is required to register as a sex offender. As such, in the event of his release from prison, his address will be easily and readily ascertainable as a matter of public record.

23. Plaintiff's reliance on *Rivera v. Guevara* as precedent for allowing him to question Bell first is misplaced, as the circumstances here with Mr. Bell are completely unlike those

Exhibit 4 at 010

involving the witness in *Rivera*. (Ex. A.) When presented with deciding which party was allowed to question an eyewitness whose identification was evidence used to convict Rivera decades prior, Judge Rowland considered the "very peculiar or unique set of circumstances." (Ex. A at 20:15-16). Specifically, the witness now lived out of state and therefore could not be compelled to appear for trial, he retained a lawyer who initially expressed her intent to fight the deposition entirely and then made clear to the parties his absolute unwillingness to appear for trial. (*See* Ex. A, 4:23-6:17.) Moreover, unlike Mr. Bell, the *Rivera* witness never blamed the police for his identification of Rivera and instead testified at postconviction proceedings that he knowingly lied when he identified Rivera at his trial. (*See* Ex. A 7:22-8:25.) In allowing the plaintiff to go first instead of the defendants who originally issued the subpoena for the deposition, Judge Rowland focused on the witness' unavailability at trial, stating that "if I thought this man was going to come to testify… there would be no issue here, okay." (*See* Ex. A, 14:4-12.) Judge Rowland also specifically expressed reservation that her ruling not be applied to other cases due to the unique set of circumstances presented in *Rivera*. *See* Ex. A, 20:24-21:11 ("So I hope that this ruling doesn't impact any of your other interactions in other cases. I think it's a pretty narrow set of circumstances."). Thus, Mr. Bell, who is currently incarcerated and is expected to remain incarcerated or live in Illinois for the foreseeable future, who has never expressed any unwillingness to testify in these proceedings, who did not testify against Walker in his criminal proceedings, and who blames Defendant Officers for coercing a confession from him implicating both himself and Mr. Walker in the underlying homicide, sits differently from the *Rivera* witness. Thus, the outcome in *Rivera* is distinguishable and should not dictate the outcome here.

24. In addition, with respect to Plaintiff's reliance on *Kitchen*, the specific facts and circumstances that the court considered when it determined that the *Kitchen* plaintiff was allowed

11

Exhibit 4 at 011

to question the witness first are unknown simply by review of the attached order. However, the *Kitchen* plaintiff made an argument similar to the one Defendants make now (i.e. that "the party who stands to be hurt by the witness's testimony… should have the advantage of questioning first."). *See* Ex. B, p. 2. Thus, if anything, under that rationale, it appears that *Kitchen* supports a ruling that Defendants be allowed to question Mr. Bell first.

25. As such, regardless of whether Plaintiff believes Mr. Bell is crucial to the claims made in his Complaint, Defendants have a valid and compelling rationale for wanting to question Mr. Bell first and do not believe that allowing Plaintiff to position this witness into providing additional favorable testimony prior to allowing Defendants the chance to question him – especially given what appears to be Plaintiff's prior contact with this witness – is advantageous or would "lay the groundwork" for Defendants' own questioning. Quite the opposite in fact, Defendants believe they would be prejudiced if they were not allowed to question Mr. Bell first for all the reasons stated above and simple equity principles should apply because Defendants sought this deposition first.

26. However, if this Court disagrees and allows Plaintiff to question Mr. Bell first on the basis of potential future unavailability, in other words the expectation that Mr. Bell's deposition will be his trial testimony, then Defendants request that this Court enter an order requiring that Plaintiff be limited to asking *only* non-leading questions, which is what Plaintiff would be limited to if he called Mr. Bell in his case-in-chief at trial. *See* Ex. A, 15:25-16:9, 18:5-17 (Judge Rowland, in allowing the plaintiff to question the *Rivera* witness first, cautioned the plaintiff's counsel that they should question this witness as they would at a trial and would not be able to "bring in a story that's leading.")

**The Parties' Disagreement over Deposition Length**

27. With respect to the time limit applicable to Mr. Bell's deposition, Defendants propose that the 7-hour limit for depositions be expanded to allow Defendants (jointly) and Plaintiff seven hours each to question Mr. Bell so that both parties are not prematurely limited to a shortened deposition, especially given the significance attributed to this witness by both Plaintiff and Defendants as more fully described above. Although Defendants do not anticipate Mr. Bell will require a full 14 hours, Defendants do not want to be limited to anything less than the 7 hours allotted under Rule 30 for their own questioning, given Plaintiff has sued 19 individual defendants as well as 2 municipal entities each with varying levels of participation and/or interaction with this witness and whom are represented by 4 separate firms who may or may not have their own line of questioning.

28. While Plaintiff does not object to conducting the deposition over two days, Plaintiff's position is that 14 hours is an excessive amount of time to subject an incarcerated third-party witness to. Furthermore, 14 hours of deposition time likely will be more than two full days at the prison, given institutional time limits. Plaintiff's position is that the deposition should be limited to two days with the time equally split between Plaintiff and Defendants.

WHEREFORE, the parties seek an order from this Court pursuant to Fed. R. Civ. P. 30(a)(2)(B) granting leave to depose Marcus Bell at Danville Correctional Center, that Defendants and Plaintiff each be allowed equal time for their respective examinations, and for the Court to resolve the disagreements over which party will initiate the deposition questioning of Mr. Bell and how many hours the deposition shall encompass.

Date: June 30, 2023.

Exhibit 4 at 013

Respectfully submitted,

For Defendant Officers
Daniel McWeeny, John Halloran, William Moser Louis Caesar,
Thomas Brankin, Robert Lane, John Byrne David Golubiak, John Griffin, Anthony Maslanka.,
Douglas Stalley as Personal Representative for the Estate of Jon Burge, Susan McCann as
Special Representative for the Estate of John McCann, Geri Lynn Yanow as Special
Representative for the Estates of Nick Crescenzo and Craig Cegielski

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel
Eileen E. Rosen
Stacy Benjamin
Andrew J. Grill
Brittany D. Johnson-Delgado
Jessica Zehner
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
Phone: (312) 494-1000
Email: sbenjamin@rfclaw.com


For Plaintiff, Keith Walker:

/s/ *Sean Starr*
Jonathan I. Loevy
Arthur R. Loevy
Isabella Aguilar
Quinn Rallins
Steven Art
Sean Starr
Carla Agbiro
Loevy & Loevy
311 N. Aberdeen
3rd FL
Chicago, IL 60607
(312)243-5900
Email: sean@loevy.com

Exhibit 4 at 014

Case: 1:21-cv-04231 Document #: 223 Filed: 07/07/23 Page 1 of 1 PageID #:2560

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
### Eastern Division

Keith Walker

                                          Plaintiff,

v.                                                       Case No.: 1:21−cv−04231

                                                                   Honorable John F. Kness

Administrator of the Estate of Former Chicago Police Department Commander Jon Burge, et al.

                                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 7, 2023:

      MINUTE entry before the Honorable Gabriel A. Fuentes: Defendant's unopposed motion to extend fact discovery from 7/6/23 to 11/6/23 (doc. #[221]) is granted. The parties' joint motion for leave to depose Marcus Bell in custody (doc. #[222]) is granted, and in the Court's discretion to manage discovery, see Jones v. City of Elkhart, Ind., 737 F.3d 1107, 1115 (7th Cir. 2013), the Court resolves the order of questioning by declaring that plaintiff shall question Bell first. Mailed notice. (lxk, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**Exhibit 4 at 015**