IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY FLORES, | ) | |
| | ) | Case No. 23 CV 01736 |
| Plaintiff, | ) | |
| | ) | Hon. John J. Tharp, Jr. |
| vs. | ) | |
| | ) | Magistrate Jeffrey Cole |
| DETECTIVE REYNALDO, et al. | ) | JURY DEMAND |
| Defendants. | ) | |

**DEFENDANT OFFICERS' MOTION TO COMPEL DISCOVERY ANSWERS**

Defendants Roland Paulnitsky and Edward Mingey (collectively "Defendant Officers"), move this Court under Federal Rule of Civil Procedure 37(a) to compel Plaintiff Johnny Flores to provide complete and sufficient answers to Defendant Officers' interrogatories, and state:

**INTRODUCTION**

Defendant Officers issued Flores interrogatories over ten months ago. Defendant Officers asked Flores to describe the specific misconduct he attributes to each Defendant Officer and identify the evidence that supports his claims that these individuals: fabricated evidence, conducted suggestive identifications, withheld exculpatory information, failed to intervene to prevent this misconduct, and conspired to deprive Flores of his constitutional rights. Flores refuses to provide the specific information requested. Instead, his response inserts a single, multipage, rambling narrative answer that he incorporates to answer twelve other interrogatories. But this narrative answer merely regurgitates the allegations in his Complaint, fails to describe

the specific misconduct he attributes to each Defendant Officer, and does not identify the evidence that supports his allegations.

This tactic is not new. Flores's counsel has used this exact strategy in other cases even though courts have not countenanced it. The strategy remains in place because its purpose is still effective: conflate his theories, group defendants together, and conceal the evidence that supports his allegations to prevent Defendant Officers from preparing defenses until they spend time and expend resources to compel proper answers. But discovery is about the disclosure—not concealment—of evidence. Thus, Flores should be ordered to provide fulsome answers to the specific interrogatories and disclose the evidence that he is currently aware of that supports his claims against each Defendant Officer.

## BACKGROUND

**A.  Flores's Complaint group pleads that "Defendants" committed a host of infractions.**

On March 21, 2023, Flores filed an eleven-count, 164-paragraph Complaint against four former Chicago Police Department Officers and the City of Chicago.[1] (Pl. Compl., Dkt. 1.) Pertinent here, under Count I, Flores contends that Defendants violated his fair trial rights by [1] fabricating evidence, (*id.*, ¶¶ 99–101); [2] conducting unduly suggestive identification procedures, (*id.*, ¶¶ 4, 50); and [3] withholding exculpatory evidence from prosecutors. (*Id.*, ¶¶ 102–03.) Flores also contends that Defendant Officers maliciously prosecuted him (Counts II and VI), failed to intervene in preventing the alleged misconduct (Count III), and conspired to

---

[1] After learning of his death, Flores has abandoned his claim against Defendant Kijowski, who was dismissed from this matter on July 10, 2023. (Order, Dkt. 37.)

deprive him of his constitutional rights (Counts IV and IX).[2] (*Id.*) Throughout his Complaint, Flores repeatedly group pleads, claiming that "Defendants" committed this alleged conduct.

**B.     Defendant Officers' issued interrogatories to Flores to identify the evidence that supports his allegations.**

On August 29, 2023, Defendant Officers served Flores with interrogatories, including the fourteen interrogatories issued by Defendant Paulnitsky that are at issue in this Motion. (Ex. 1, Flores's 2d. Supp. Resp. to Paulnitsky's Rogs., Nos. 1–2, 4–15.) In general, these interrogatories requested Flores to specify the misconduct he attributes to each Defendant Officer that forms the basis for each claim made. (*See generally id.*) Indeed, interrogatories nos. 1 and 2 simply ask Flores to "Identify, with specificity, what conduct you attribute to [Defendant Roland Paulnitsky and Ed Mingey] which you claim led to your arrest, prosecution, and conviction for the murder of Jeffrey Rhodes." (*Id.*, Nos. 1–2.)

As to Flores's fabrication claim, Defendant Paulnitsky issued five interrogatories that are at issue. (*Id.*, Nos. 4, 7–10). Interrogatories nos. 4, 7, and 10 asked Flores to "identify with particularity all the evidence known to you at this time that supports" the allegations in his Complaint that deal with his fabrication claim. (*Id.*, Nos. 4, 7, 10.) Flores alleges [1] that "Defendants Mingey and Kijowski fabricated a story that unidentified people told them that the crime was committed by Plaintiff," (*Id.*, No. 4, citing Pl. Compl. 45); [2] that he "was found guilty, based on manufactured evidence," (*Id.*, No. 7, citing Pl. Compl., ¶ 60); and [3] that "Defendants fabricated witness statements" that they knew were "false." (*Id.*, No. 10, citing Pl Compl. 99–100.) Interrogatories nos. 8 and 9 asked **when** the evidence was fabricated, (*id.*, No.

---

[2] Flores also brings claims under *Monell* against the City (Count V), intentional infliction of emotional distress (Count VII), willful and wanton conduct (Count VIII), *respondeat superior* (Count X), and indemnification (Count XI).

3

8), and to identify *what* Flores or his agents did *when* they learned about the allegedly fabricated evidence. (*Id.*, No. 9.)

Regarding Flores's *Brady* claim, Defendant Paulnitsky issued four interrogatories that are at issue. (*Id.*, Nos. 11–13, 15.) Interrogatory no. 11 is directed at Flores allegation that Defendant Officers "deliberately withheld exculpatory evidence" and "concealed, fabricated and destroyed additional evidence that is not yet known to Plaintiff." (Pl. Compl. ¶¶ 102–03.) It asked Flores's to "identify with particularity all the evidence known to you at this time that was allegedly 'withheld,' 'concealed, fabricated, and destroyed' by Defendants Mingey and/or Paulnitsky." (*Id.*, No. 11, citing Pl. Compl., ¶¶ 102–03.)

Interrogatories nos. 12 and 13 sought more information about *when* Defendant Officers "came into possession or first learned of" the supposed exculpatory evidence, (*id.*, No. 12), and to identify *what* Flores or his agents did *when* they learned about the exculpatory evidence. (*Id.*, No. 13.) And interrogatory no. 15 unambiguously requested Flores to identify the documents that he claims were withheld. It asks Flores:

> Are you aware of any documents that were not produced or tendered to prosecutors or defense counsel during any of the underlying criminal proceedings relating to the Jeffrey Rhodes homicide? If so, please identify and state with particularity the documents you claim were not so produced or tendered, including but not limited to, their date, author recipient, and subject matter, and if you have possession of the document, produce a copy pursuant to Fed.R.C.P.34, or identify it by Bates number if previously produced.

(*Id.*, No. 15.)

Concerning Flores's suggestive identification claim, interrogatory no. 6 asked Flores to "identify with particularity all evidence known to you at this time that supports" his allegation that "Defendant Paulnitsky manipulated Thurmond into selecting Plaintiff's photograph from the photo array." (*Id.*, No. 6, citing Pl. Compl., ¶ 50.)

4

Finally, interrogatories nos. 14 and 5 relate to Flores's failure to intervene and conspiracy claims. Flores alleges that Defendant Officers "'stood by without intervening to prevent the violation of Plaintiff's constitutional rights' and 'had ample reasonable opportunities' to intervene." (Pl. Compl., ¶¶ 115–16.) Interrogatory no. 14 asked Flores to "identify the reasonable opportunities Defendant Paulnitsky and Mingey had, including when those opportunities presented, who was present, what occurred and identify any evidence supporting this allegation known to you at this time." (Ex. 1, No. 14, citing Pl. Compl., ¶¶ 115–16.) Flores further alleges that "[Mingey, Kijowski, and Paulntisky] decided to frame Mr. Flores for the Rhodes homicide." (Pl. Compl., ¶ 46.) Interrogatory no. 5 requested that he "identify with particularity all evidence known to you at this time that supports this allegation." (Ex. 1, No. 5, citing Pl. Compl., ¶ 46.)

Each of the fourteen interrogatories at issue asked for the information "known to [Flores] at this time," and then, in line with Federal Rule of Procedure 26(e), stated that Flores "may seasonably supplement this interrogatory if/when you learn of more evidence." (*See generally id.*); *see also* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect").

C. **Flores's initial answers and Defendant Officers' meet and confer efforts.**

Flores answered these interrogatories on October 12, 2023. (*See generally* Ex. 2, Flores's Resp. to Def. Paulnitsky's Rogs.) For each answer, Flores followed a scripted pattern: he asserted a half-page of boilerplate objections, referred Defendants to his Complaint, and "agreed to supplement his response at a time mutually agreed by the parties." (*Id.*) Flores failed to answer the specific questions posed, so Defendant Officers sent Flores's counsel a Rule 37.2 letter outlining the deficiencies, explaining that his objections lacked merit and his reference to his

5

Complaint was improper, and requesting Flores supplement his responses with the information requested. (Ex. 3, 12/11/23 Defs. Letter to Pl. at *5–6.) On January 12, 2024, counsel for Flores and Defendant Officers conferred for almost an hour discussing the deficiencies in Flores's answers. Flores's counsel agreed to supplement his answers to the deficient interrogatories.

Two months later, on March 27, Flores supplemented his answers. (*See generally* Ex. 4, Pls. 1st Supp. Resp. to Def. Paulnitsky's Rogs.) The supplemental answers were identical to his original answers except he added that "Plaintiff is not personally currently aware of any other information with which he could supplement this response." (*See, e.g.*, *id.*, No. 1.)

### D. With oral discovery beginning, Defendants Officers reached an impasse with Flores's third round of deficient answers.

On April 10, 2024, Defendant Officers sent another letter pursuant to Rule 37.2 that informed Flores that he had not addressed Defendant Officers concerns, and his supplemental answers remained deficient because his attempts to limit his answers to his personal knowledge were improper. (*See* Ex. 5, 4/10/24 Defs. Letter to Pl., at *2.) Flores agreed to supplement his answers again, which he did on May 9. (Ex. 1, Pl. 2d. Supp. Resp. to Def. Paulnitsky's Rogs.) But his second supplemental answers remained deficient and again did not address the Defendant Officers' specific requests and concerns. Flores asserted a three-page narrative that merely synthesizes the allegations in his Complaint in response to interrogatory No. 7, (*id.*, No. 7), which he then incorporates to answer all additional interrogatories. (*See, e.g.*, *id.*, No. 4.)

Flores's counsel has habitually used this tactic in other cases despite knowing it does not appropriately answer specific interrogatories and instead provides a jumbled mess of allegations that Defendant Officers must try to unwind and dissect to understand Plaintiff's claims and evidence. *See, e.g.*, *Bouto v. Guevara*, 19-cv-2441, 2020 WL 4437669 (N.D. Ill. Aug. 3, 2020);

6

Ex. 6, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174 (N.D. Ill. 2022). To be sure, after a paragraph of objections, Flores responds:

> Plaintiff incorporates his complaint that alleges in factual detail that Defendants conspired to falsely implicate Plaintiff in the Rhodes murder. Further answering, Plaintiff cannot possibly know at this early stage of litigation every piece of evidence that comprised Defendants' conspiracy to frame Plaintiff because this information is in Defendants' hands, Defendants have conspired to continue to suppress and destroy that they fabricated evidence, and discovery has only just begun. Plaintiff is not personally currently aware of any other information with which he could supplement this response.
>
> Answering further, Defendants Guevara, Paulnitsky, Mingey, and Kijowksi manufactured evidence, including from third-party witness Scott Thurmond, whom they coerced into falsely implicating Plaintiff in the shooting death of Jeffrey Rhodes. These fabrications were then documented in line-up reports, supplementary reports, and in statements and testimony from Defendants Guevara and Paulnitsky. Defendants suppressed that they had fabricated evidence, they suppressed the illegal tactics that they used to obtain a false statement from Scott Thurmond, they did not document investigative steps, they withheld documents and reports, and they suppressed evidence of their long pattern of misconduct during homicide investigations, all of which would have shown Plaintiff was innocent and would have undermined the testimony of the State's witnesses (including the testimony of Guevara himself).
>
> Plaintiff had nothing to do with the murder, and he has always maintained his innocence. Not a single shred of physical evidence ever connected Plaintiff to the Jeffrey Rhodes murder, and he had no motive to commit the crime. Nonetheless, Defendant Guevara and the other Defendants manufactured false evidence against him.
>
> That false evidence included a story fabricated by either Defendant Guevara or by Defendants Mingey and Kijowski or by Defendant Paulnitsky that unidentified people had named Plaintiff as the perpetrator. In addition, Defendant Paulnitsky coerced Scott Thurmond—an eyewitness to the shooting and a friend of the victim—into implicating and identifying Plaintiff in a photo array. Defendants Guevara and Paulnitsky also coerced Thurmond into implicating and identifying Plaintiff in a live line-up and withheld truthful accounts of their actions from police reports, which would have otherwise exposed their misconduct.
>
> The initial investigation into Jeffrey Rhodes's homicide in November 1989 revealed little to no leads, including no physical evidence at the location Thurmond had identified as where the shooting took place. Initially, Thurmond told investigators that he and the victim were walking back to the victim's house when they saw two

women and a Hispanic man walking by who yelled "Disciple love," and the victim responded, "Fuck that gang bullshit." The man then fired two shots at the victim, after which Thurmond ran into a bar to get help. Bar employees described Thurmond as drunk and agitated. Thurmond was so intoxicated he could not identify where the shooting had taken place. In late March 1990, Defendant Paulnitsky was assigned to the investigation by Defendants Kijowski and Mingey. Defendants Paulnitsky, Guevara, Mingey, and Kijowski decided to pin Jeffrey Rhodes's murder on Plaintiff.

Defendant Paulnitsky wrote a report on April 4, 1990, stating that numerous gang members in the area of the shooting had stated that a male white Hispanic named Johnny Flores was responsible for Jeffrey Rhodes's shooting. Defendant Guevara wrote a report that same day, stating that he had received information on the street that Plaintiff—an individual he knew of—was involved in the shooting. This story that gang members had identified Plaintiff as involved in the shooting was entirely fabricated by Defendants and was repeated to prosecutors in advance of Plaintiff's trial.

In Paulnitsky's April 4 report, Defendant Paulnitsky also wrote that he brought Thurmond in to view a photo array. During the photo array, Paulnitsky manipulated Thurmond into falsely identifying Plaintiff as the perpetrator. The tactics Defendant Paulnitsky used to obtain this false identification from Thurmond were not disclosed to prosecutors, to Plaintiff, or to his criminal defense attorneys.

Defendants Guevara and Paulnitsky then arrested Plaintiff and transported him to Area Five. In his April 4 report, Defendant Paulnitsky wrote that Thurmond was then contacted and brought into Area Five to view a line-up on March 31, 1990 that he conducted, with Guevara present, and that included Plaintiff. According to Paulnitsky, Thurmond became distraught, incoherent, and passed out while viewing the line-up, and it therefore concluded without an identification.

In his April 4 report, Defendant Paulnitsky wrote that Thurmond contacted him on April 3 and stated that he had been able to identify the perpetrator on March 31; he was a white male Hispanic; and identified the position he had been in during the line-up. There is either no contemporaneous report documenting this conversation, it has been suppressed, or Defendant Paulnitsky fabricated this conversation. Paulnitsky also wrote in his April 4 report that he and Guevara arrested Flores again on April 4 and brought him in for a second line-up, viewed by Thurmond, conducted by Paulnitsky, and with Guevara present. Defendants manipulated Thurmond into falsely identifying Flores as the perpetrator during this line-up. Defendants never disclosed the tactics they used to obtain this false identification from Thurmond to prosecutors, to Plaintiff, or to his criminal defense attorneys.

In addition to the information above, Plaintiff will provide a more detailed analysis of all of the Chicago Police Department records that were not disclosed to him or to prosecutors during his criminal case, once the City of Chicago and other Defendants complete their production of documents. Plaintiff's investigation into this matter

8

continues and he reserves the right to supplement or modify this answer as new information comes to light.

(Ex. 1, Pl. 2d Supp. Resp. to Def. Paulnitsky's Rogs, No. 7)

Flores's answer forces Defendant Officers to interpret what parts of this disjointed narrative apply to what specific interrogatories. After Defendant Officers made several attempts to request Flores's to properly answer the interrogatories, the parties at an impasse. Defendant Officers seek the Court's assistance in obtaining complete answers to their interrogatories.

## RULE 37.2 COMPLIANCE

As detailed above, Flores's counsel, Annie Prossnitz, and Defendant Officers' counsel, Maurice Hunt conferred via telephone on January 12, 2024, for about an hour to discuss Flores's deficient answers in addition to exchanging numerous letters and emails before and after the telephone conference.

## ARGUMENT

"The purpose of an interrogatory" has long been "to enable the proposing party to prepare for trial." *U.S. v. General Motors Corp.*, 2 F.R.D. 528, 531 (N.D. Ill. 1942). Indeed, "contemporary thought has concluded that secrecy is not congenial to truth-seeking, and that trial by ambush is incompatible with the just determination of cases on their merits." *Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2009 WL 10695968, at *2 (N.D. Ill. April 15, 2009). As such, a party may seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

A party may "move for an order compelling an answer" if "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). It is the requesting party's burden "to explain why the

9

opposing party's responses are inadequate." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 2339947, at *3 (N.D. Ill. June 29, 2022) (Finnegan, J.)

A.  **Defendant Officers' interrogatories go to the heart of Flores's Complaint.**

The crux of Flores's Complaint is that Defendant Officers fabricated evidence and deliberately withheld exculpatory evidence. (*See Pl.* Compl., Dkt. 1, ¶¶ 99–102.) These are the bases on which he contends his due process right to a fair trial was violated. His Complaint, however, is riddled with group pleading. (*See generally id.*, ¶¶ 22–60.)

To address the uncertainty of what each Defendant is alleged to have done, Defendant Officers, specifically Defendant Paulnitsky, issued interrogatories that asked Flores to identify ***what*** was done, ***who*** did it, ***when*** they did it, and ***how*** they did it. These interrogatories are necessary because "the entire purpose of interrogatories is to get opposing parties to identify a specific subset of evidentiary support for their claims and defenses." *Bouto*, 2020 WL 4437669, at *2. But Flores's narrative answer confuses which Defendant is alleged to have done what and fails to identify the specific evidence that supports each claim.

B.  **Flores's objections to Defendant Officers' interrogatories are without merit.**

In response to the interrogatories at issue, Flores asserts mostly boilerplate objections. (*See, e.g.*, Ex. 1, Pl. 2d. Supp. Resp. to Def. Paulnitsky's Rogs., No. 1.) First, he objects that the requests are being propounded at the outset of discovery, and he "has not yet had the opportunity to depose Defendants." (*Id.*) But it does not matter when Defendant Officers issued their interrogatories because Flores had to have a good-faith basis to advance his allegations and Defendant Officers are entitled to discover what information Flores had to support the allegations at the time they were made. Fed. R. Civ. P. 11(b)(3).

10

Flores, through counsel, has investigated the underlying incident and been in possession of the information sought in discovery for at least five years.[3] He was represented during post-conviction proceedings by the Exoneration Project ("EP"), which shares the same offices and attorneys as his current counsel, Loevy & Loevy. Flores can hardly argue that he is unable to alert Defendant Officers to the information which he claims supports his allegations against them.

Moreover, eleven months have elapsed since the interrogatories were issued. During that time, Defendant Officers produced over 4,600 pages of records and responded to scores of Flores's interrogatory requests. Defendant Officers have also produced more than 34,000 pages of documents from subpoena responses, including over 27,000 pages from Flores's post-conviction attorneys at the EP. And Flores has produced over 4,700 pages of records. Flores has more than enough information to describe who did what and his supporting evidence. Defendant Officers appreciate that more evidence may become known during discovery. But that is properly dealt with by supplement under Rule 26(e) as many of the interrogatories invite. Simply not having all the evidence Flores may rely on is not an excuse to withhold the information of which he is currently aware. (Ex. 6, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174, at *3 ("Plaintiff may be correct that supplementation could be expected after oral discovery is complete, but that does not release him from his duty to respond now with actual facts adduced thus far, not merely a narrative theory.")).

But Defendant Officers will be unfairly prejudiced if Flores does not fully and completely answer their requests before depositions because it prevents them from properly preparing for those depositions. At bottom, "the goal of discovery . . . is to enable both sides to make effective

---

[3] The Exoneration Project filed his post-conviction petition on September 12, 2017.

11

preparation for trial" and avoid "unfair surprise." *Zingerman v. Freeman Decorating Co.*, No. 02 C 6050, 2003 WL 22057032, at *4 (N.D. Ill. Sept. 3, 2003). Defendant Officers are entitled to know what exactly it is that Flores contends subjects them to liability.

Relatedly, Flores objects that Defendant Officers' interrogatories are contention interrogatories. The interrogatories' plan language undercuts this objection because they do not ask what he "contends," seek "all information," or "every piece of evidence." *Id*. Instead, they ask that Flores provide the information and evidence that he is currently aware of and invite him to supplement as he discovers more responsive information.

Finally, Flores objects that "the information relevant to this inquiry is principally in the possession, custody, or control of the Defendants." (Ex. 1, Pl. 2d Supp. Resp. to Def. Paulnitsky's Rogs., No. 1.) This objection is no more than improper burden shifting that lacks any basis in the law. (*See* Ex. 6, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174, at *5 ("Plaintiff has offered no support for this argument, which presupposed Defendants' liability and also flips the evidentiary burdens.")). Flores's objection does not absolve him of his duty to fully and completely answer interrogatories with all information known to him.

**C.      The limited answers Flores did provide are evasive and deficient.**

Flores's circuitous answers are improper. Interrogatories must "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "An interrogatory answer should stand on its own, be complete, and not refer to pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without a cross-checking comparison of answers." *Ropak Corp. v. Plastican Inc.*, No. 04 C 5422, 2006 WL 1005406, at *4 (N.D. Ill. April 17, 2006)

Here, Flores's second supplemental responses to Defendant Paulnitsky's interrogatories that are at issue all refer back to his Complaint before referring to his omnibus narrative answer to Paulnitsk's interrogatory No. 7. (*See, e.g.*, Ex.1, Pl. 2d. Supp. Resp. to Def. Paulnitsky's Rogs., No. 1–2, 4–7, 10–14; *see also* Ex. 6, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174, at *4 (collecting cases that citing allegations is an "insufficient response to an interrogatory seeking the factual basis of those allegations").

Flores lengthy narrative that simply rehashes the allegations in his Complaint is not a one-size-fits-all answer to every interrogatory. Defendant Officers are entitled to know specifically what materials Flores alleges Defendant Officers fabricated. They should not be forced to hunt for the answer in a sprawling litany of allegations purposely conflating what materials were fabricated, what were withheld, and what are simply facts to which Flores agrees.

For instance, within his answer to interrogatory No. 7, Flores states: "Defendants Guevara and Paulnitsky then arrested Plaintiff and transported him to Area Five." (*See id.*, at *11) Interrogatory no. 7 requested that Flores identify all evidence he alleges was fabricated. His answer suggests that the arrest and transport of Flores to Area Five was fabricated. But that cannot be because he also alleges that happened. Thus, the main problem with his circular references is the confusion and lack of clarity that he creates so he can pivot his theories and corresponding evidence. Defendant Officers are entitled to clear answers and should not be put at a disadvantage in trying to interpret Flores's musings on the entire case and what evidence supports what theories.

Additionally, Flores thwarts Defendant Officers' attempts to learn what they each are alleged to have done. Rather than identifying the specific misconduct each Defendant Officer allegedly performed, he simply refers to the group pleading that "Defendants violated his rights."

13

Again, Defendant Officers should not have to guess what misconduct Flores alleges they did. Flores should make that clear, especially considering the five years of investigation into his claims before filing this case and the rolling production of documents during discovery to date.

But Flores continues to respond with his conclusory vague allegations despite his counsel being instructed not to do so in the past. *See Bouto v. Guevara*, 2020 WL 4437669, at *2 (granting motion to compel and stating it was "perplexed" by plaintiff's argument that defendants are not entitled to "a sworn accounting from Plaintiff identifying the specific subset of evidentiary support that Plaintiff had at the time he filed his Complaint"); *see also* Ex. 6, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174, at *4 (granting motion to compel and ordering that "If Plaintiff lacks specific evidence, he may say so. If the evidence is primarily circumstantial, as he asserts in his response brief, he may list it. What he may not do, however, is answer requests for specific evidence supporting specific claims by generally describing the complaint's allegations or his theory of liability in broad strokes"). This cannot be reconciled with the Rules.

**D.** **Flores should supplement his deficient answers with the information requested.**

Flores's evasive answers obstruct the efficient disposition of this case, and forces Defendant Officers to turn over every stone and expend significant time and money to prepare to defend against a moving target. By refusing to answer the interrogatories, which are aimed to clarify his claims and identify the corresponding evidence with specificity, discovery is frustrated. The Court's assistance is warranted. Accordingly, this Court should order:

- Flores to clearly and completely answer the interrogatories within 21 days with only the information sought and refrain from circular references within his answers.
- If Flores cannot identify evidence responsive to Defendant's requests, he must say so. If the evidence is circumstantial, he should explain the circumstances.
- Failure to comply with this Court's order may result in sanctions enumerated under Federal Rule of Civil Procedure 37(b)(2)(A) and 37(c)(1)

## CONCLUSION

For these reasons, Defendant Officers ask this Court to grant their motion to compel Flores under Rule 37(a) to provide proper interrogatory answers, and for any other appropriate relief.

Dated: August 7, 2024                    Respectfully submitted,

/s/ Maurice C. Hunt
MAURICE C. HUNT, Attorney No. 6328749
*One of the Attorneys for Defendant Edward Mingey and Roland Paulnitsky*

James G. Sotos
Josh M. Engquist
David A. Brueggen
Kyle T. Christie
Maurice C. Hunt
THE SOTOS LAW FIRM, P.C
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
P: (630) 735-3300
mhunt@jsotoslaw.com

**CERTIFICATE OF SERVICE**

I certify that on August 7, 2024, I electronically filed the foregoing Defendant Officers' Motion to Compel Discovery Answers with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

| ***Attorneys for Plaintiff*** | ***Attorney for Reynaldo Guevara*** |
|---|---|
| Arthur Loevy | Misha Itchhaporia |
| Jonathan Loevy | Graham P. Miller |
| Lauren Carbajal | Emily E. Schnidt |
| Ruth Bown | Timothy P. Scahill |
| Russel Ainsworth | Steven B. Borkan |
| Carla Agbiro Linton | Whitney N. Hutchinson |
| Annie Prossnitz | Molly Boekeloo |
| Loevy & Loevy | Borkan & Scahill, Ltd |
| 311 North Aberdeen St, Suite | 20 S. Clark Street, Suite 1700 |
| (312)243-5900 | Chicago, IL 60603 |
| arthur@loevy.com | (312)580-1030 |
| jon@loevy.com | mitchhaporia@borkanscahill.com |
| carbajal@loevy.com | gmiller@borkanscahill.com |
| ruth@loevy.com | eschndit@borkanscahill.com |
| russell@loevy.com | tscahill@borkanscahill.com |
| prossnitz@loevy.com | sborkan@borkanscahill.com |
| agbiro@loevy.com | whutchinson@borkanscahill.com |
| | mboekeloo@borkanscahill.com |

**Attorney for City of Chicago**
Eileen E. Rosen
Theresa Carney
Catherine Barber
Austin Rahe
Andrew Grill
Jessica Zehner
Lauren Ferrise
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
(312)494-1000

erosen@rfclaw.com
tcarney@rfclaw.com
cbarber@rfclaw.com
arahe@rfclaw.com
agrill@rfclaw.com
jzehner@rfclaw.com
lferrise@rfclaw.com

/s/Maurice C. Hunt
MAURICE C. HUNT
*One of the Attorneys for Edward Miney and Roland Paulnitsky*