IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 1736 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the following reasons, the plaintiff's Motion to Compel [Dkt. #108] is denied in part and granted in part.

This is another *Monell* case, and another Guevara case, in which the Loevy law firm and the City of Chicago trudge over much of the same ground they have trudged over several times before in other cases. And that ground involves discovery disputes and motions to compel about essentially the same topics, over and over. The court notes that the plaintiff's current motion to compel comes with no Local Rule 37.2 certification regarding the parties having had a conference to resolve these disputes, which must recite "the date, time and place of such conference, and the names of all parties participating therein." The plaintiff says only that "[t]he parties have conferred many times over the phone and in writing; have reached impasse . . . ." The court realizes that the plaintiff's law firm is not particularly fond of the certification requirement, *see e.g., Ezell v. City of Chicago*, No. 18 C 1049, 2022 WL 3081829, at *1 n.2 (N.D. Ill. Aug. 3, 2022); *Ezell v. City of Chicago*, No. 18 C 1049, 2021 WL 2136395, at *2 (N.D. Ill. May 26, 2021), but attorneys should not be so dismissive of Local Rules. They may appear futile to some lawyers, and probably are in this case, but they are

Rules, after all.

Based on the emails the parties exchanged three and a half months ago and which the plaintiff has included among 360 pages of exhibits attached to its motion – emails that don't count under Local Rule 37.2, *see Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2024 WL 1620613, at *3 (N.D. Ill. Apr. 15, 2024) – it looks as though the two sides weren't even arguing about the same things half the time and weren't sure what things they had agreed on. [Dkt. #108-2 ("I don't think we are yet on the same page."; "We have quite obviously gotten our wires crossed and I misunderstood what you were seeking precisely."; "Let me try again as I think I'm still not getting through."; "I don't know how this got so confusing and I don't have the time to unravel it all now . . . .")]. Discovery tends to get confusing, sometimes irretrievably so, because attorneys often choose to make it that way as a strategy and refuse to take a reasonable view of what they actually need in discovery on one side and what they really should provide in discovery on the other side. That may or may not have been the case here.

But, when things get that bad, that's the time to actually *meet* and *confer*, as Local Rule 37.2 mandates, and do so *in good faith*. Based on the emails the plaintiff has given the court it looks as though the parties had a single telephone call over these issues at 4 pm way back on October 3, 2024, and claimed to be at an impasse as to the bulk of what is raised in the plaintiff's motion. [Dkt. #108-2]. If that's the case – and again, there has been no proper Local Rule 37.2 certification, so there's no way to know – then from an objective perspective, one has to question how important the discovery at issue is to the plaintiff's case, as well as whether the defendant is merely stonewalling. From an objective perspective, it looks as though the attorneys went through the motions, drew lines in the sand, and just decided to file well over one thousand pages of briefs and exhibits [Dkt. ## 108,

116] over the course of about a month and let the court "unravel it all now." If a dispute is that extensive, it would seem to merit more than a single phone call five months ago, *see, e.g., Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2022 WL 17082587, at *1 (N.D. Ill. Nov. 18, 2022)("If two sides are battling over nine separate discovery issues for at least five months, a single phone call does not meet their Local Rule 37.2 obligations."); *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958B59 (N.D. Ill. 2018)("Chatting for a bit about a dispute .... is not engaging in a good faith meet and confer."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute ... doesn't come close to sufficing."); *Chamberlain Grp. v. Lear Corp.*, 2010 WL 2836975, at *2 (N.D. Ill. 2010)(single face-to-face meeting did not meet the Local Rule's requirements), but here we are.

It's a shame, really, that through all of these similar cases, the attorneys for the two sides have not taken advantage of Local Rule 37.2's "meet-and-confer" requirement to establish a single, agreed-upon protocol to resolve these recurring issues and save repeated expenditures of judicial resources across several courtrooms. It would seem that both sides would appreciate a single set of rules to head off these recurring discovery disputes across all these Guevara cases, rather than running to court for discretionary discovery rulings time and time again. The broad discretion courts have in resolving discovery disputes, *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013), means two or three or four different judges could arrive at different resolutions of very similar disputes and none of them would be "wrong.*" Mejia v. Cook Cty.*, Ill., 650 F.3d 631, 635 (7th Cir. 2011). Indeed, that substantial discretion almost ensures inconsistency. *Johnson v. Daley*, 339 F.3d 582, 593-94 (7th Cir. 2003). But, perhaps a consistent discovery format is not as

desirable to the lawyers in these cases as the court might imagine. In any case, here are my rulings on the parties' disputes.

**Open Homicide Files**

The main dispute between the parties is one they have been haggling over for a few years and in a few cases: the relevance of open homicide files to the plaintiff's *Monell* claims and whether the defendant has to produce such files in discovery. Just about a half-century ago, *Monell* held:

> that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "The Court has also included terms like 'usage' and 'practice' as customs for which liability is appropriate." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). A plaintiff hoping to prove a custom or a practice generally must prove a prior pattern of similar constitutional violations. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). And "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985). Thus, at first blush, it seems apparent that both closed *and* open files would be relevant – albeit to varying degrees – because both would show the practices and customs of police officers in the situations addressed by the plaintiff's Complaint. In other words, if one or two detectives do something one or two times, maybe it's not a pattern. But, the more examples of them doing something, the more it begins to look like a pattern.

4

Why, then, would the conduct revealed in open files be completely *irrelevant*, as the defendant claims? The defendant argues, essentially, that if a file is open, no one was charged, so the police could not possibly have engaged in any of the practices the plaintiff's Complaint alleges. [Dkt. #116, at 4-5 ("It is more than far-fetched to suggest that detectives went through the effort to fabricate or manipulate an identification but then did not pursue charges. Indeed, doing so would mean leaving the case open despite apparent inculpatory eyewitness evidence.")]. It's not an entirely convincing argument, especially in a discovery proceeding. Short of coercing a confession, perhaps whatever other fabrications or manipulations are being employed are not always successful. Perhaps something else upended the investigation. But, the defendant's stance raises the question: if, as the defendant suggests, none of the open files could possibly include any evidence of the activities the plaintiff's complaint is targeting, wouldn't those files offset evidence of those activities in closed files and make a pattern or a custom less likely? If not a single open file involved any questionable conduct by a police officer, they would still be relevant, just not in a manner that the plaintiff would like. As such, the defendant's stance that the open files are not relevant to any degree at all – not a position it has taken consistently in these cases [Dkt. #116, at 10] – is what seems at least a little far-fetched.

As for the defendant's position that production of the open files from 1985-89 is burdensome, that's difficult if not impossible to dispute. The question is, distilling everything down, whether it's *unduly* burdensome. The plaintiff argues that since defendants were ordered to produce open files from 1987-89 in *Lugo*, the burden is lessened. Lessened is not erased, and burden is more than just a numbers game.

After reviewing the parties' submissions on the burden question, the court finds the course

to follow is the one laid out by the courts in *Rivera v. Guevara*, No. 12 C 4428 (N.D.Ill. Feb. 3, 2015) [Dkt. #161 ("Charges might still be brought in these homicide cases. In the Court's opinion that increases the burden on the City (and future citizens charged with these offenses) of removing the file from Area North for production. Plaintiff's motion to compel production of the pen files and to expand the open file inspection is denied."); and *Bouto v. Guevara*, No. 19 C 2441 (N.D. Ill. Sept. 30, 2024). The ruling on open files in *Bouto* is especially compelling, given the court's well-reasoned analysis and the fact that it had previously ruled that open files were fair game, burdensome or not:

> In the time since the Court ruled that the City must produce the open homicide files in question, the landscape of this case has changed significantly. The issues have been narrowed [see, e.g., Dkt. 279] and the potential relevance of open homicide files now appears diminished and is outweighed by the burden of their production. For example, in another related case, Plaintiff's counsel admitted that the homicide files did not prove relevant for their coerced confession theory. [Dkt. 309-1 at 26:7-11.] While the Court recognizes that statement is from another case and only covers one of Plaintiff's theories, it calls into question the weight of the relevance of homicide files in this case. The Court is also sensitive to the additional burden of producing open homicide files, which are ostensibly ongoing criminal investigations. In light of these changes in the case, the Court now believes that the burden of production outweighs the relevance of open homicide files. The Court does not believe that this ruling prejudices Plaintiff in any meaningful way. First, The Court notes that no other Court in this case or the related cases being litigated in the Northern District of Illinois have ordered that open homicide files should be produced. Moreover, the City is still required to produce five years of closed homicide files in this matter, which should provide Plaintiff with ample fodder to prove his claims and develop his theories of the case. With the additional benefit of the intervening years, the Court believes that if homicide files are going to prove Plaintiff's case at all, doing so can be adequately accomplished by using the closed homicide files; requiring the City to produce open homicide files would provide almost no additional benefit, while burdening the City with the time and cost of producing the documents, as well as the added danger of divulging documents related to ongoing murder investigations. As such, the Court amends its prior order and rules that the City will no longer have to produce open homicide files.

*Bouto v. Guevara*, No. 19 C 2441 (N.D. Ill. Sept. 30, 2024) [Dkt. #311].

And so, weighing the concerns on both sides, and given previous rulings that the burden and consequences of producing open files outweighs the potential relevance or likely utility of those files, *see, e.g.*, *Bouto v. Guevara*, No. 19 C 2441 (N.D. Ill. Sept. 30, 2024) [Dkt. #311]; *Davila v. Guevara,* No. 23 C 1739 (N.D.Ill. Feb. 26, 2025) [Dkt. #143]; *Rivera v. Guevara*, No. 12 C 4428 (N.D.Ill. Feb. 3, 2015) [Dkt. #161], the plaintiff's motion as to open files is denied. The court acknowledges that the court in *Lugo v. Rivera*, No. 23-1738 (N.D.Ill. Sep. 18, 2024) [Dkt. #130] went a different way, but it would appear that the issue of burden eventually addressed in both *Bouto* and *Rivera* – which *Lugo* relied upon in terms of the relevance question – was not raised in *Lugo*.

As for the defendant "weaponizing" the lack of open files in the data that the plaintiff's experts will have at their disposal, while not exactly a Fed.R.Civ.P. 37(c)(1) issue, it would certainly seem that a party who has not produced a category of discovery would not be allowed to rely on that category, or the absence of that category. But, that is not a discovery issue. If it comes to a head, it's a pre-trial matter to be addressed in *Daubert* motions and responses before the trial judge.

**Additional CR files from 1985-86**

The other dispute is also another all-too-familiar one in these Guevara cases and, really in litigation in general: how many years of files is enough, and how many years is too many? These are the types of disputes that ought to be resolved through good faith negotiations as Local Rule 37.2 directs. But, plaintiff's law firm and the City's lawyers, as already suggested, don't have the best history with Local Rule 37.2, *see, e.g., Flores v. Guevara*, No. 23 C 1736, 2024 WL 4203080, at *3 (N.D. Ill. Sept. 16, 2024)("Ideally, the parties should have a good faith, Local Rule 37.2 meet-and-confer before the plaintiff begins. They haven't done much in that vein, conferring for less than an hour over their two motions in the course of a year and, seemingly, refusing to budge.");

7

*Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3709187, at *2 (N.D. Ill. Aug. 20, 2021)("While nothing can yet be said about the proof regarding the substantive issues in this case, the parties have succeeded in proving (1) that the dictates and aspirations of Local Rule 37.2 are no match for them . . . the parties figuratively have engaged in trench warfare, refusing to budge more often than not, lobbing shells at one another in the form of discovery motions and associated filings which span over 2,250 pages of discovery dispute filings."); *Ezell v. City of Chicago*, No. 18 C 1049, 2022 WL 3081829, at *1 (N.D. Ill. Aug. 3, 2022)("Plaintiffs' lawyers have missed the mark on their Local Rule 37.2 certifications before."); *Mims v. City of Chicago*, No. 18 C 7192, 2021 WL 5006649, at *2 (N.D. Ill. Oct. 28, 2021)(". . . the plaintiff's offer of "dep-for-dep" was an excellent, time-saving and judicial resource-saving compromise. . . . But, unfortunately, it was one the defendants rejected out-of-hand; . . . .").

      The plaintiff's lawyers already have, or are getting, files for a three-year period: 1987-1989. They want two more years' worth, from 1985-1986. The defendant claims that the three-year period covers 400 files and says that's plenty. So, we are arguing over three years and 400 files versus five years and perhaps 666 files, assuming an average of 133 files per year. Neither side, however, provides any support for their steadfast positions. Why, for example, are 400 files not enough to prove a *Monell* claim? Plaintiff offers no examples of cases that were lost because a plaintiff had no more than 400 files. Why, for another example, is the defendant sure that 400 is adequate? The defendant provides no examples of cases the defendant lost in which there were 400 files or fewer. For that matter, why does the burden of production outweigh the probative value of the files at the 401 mark and not at the 667 mark? Again, the defendant provides no useful analysis. Neither side does.

One supposes that a statistical expert could study the matter and offer an opinion that 400 files was too small a sample size. Of course, one also supposes that a statistical expert could study the matter and offer an opinion that 400 files was a more than adequate sample size. What the expert said would, of course, depend on which side engaged the expert, so their opinions would provide little real guidance for the resolution of this dispute. *See, e.g., Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986)("[E]xpert witnesses ... are often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be proved by some so-called 'experts.' "); Jack Weinstein, Improving Expert Testimony, 20 U.Rich.L.Rev. 473, 482 (1986) ("an expert can be found to testify to the truth to almost any factual theory, no matter how frivolous."); Michael H. Graham, Expert Witness Testimony and the Federal Rules of Evidence: Insuring Assurance of Trustworthiness (1986) Ill.L.Rev. 43, 45; 29 ("Today practicing lawyers can locate quickly and easily an expert witness to advocate nearly anything the lawyers desire."); Huber, Safety and the Second Best: The Hazards of Public Risk Management in the Courts, 85 Colum.L.Rev. 277, 333 (1985) ("A Ph.D. can be found to swear to almost any expert proposition no matter how false or foolish."). But, if we had mini-trials over these types of discovery disputes, litigation would simply never end and the only people who might be happy would be attorneys.

The fact of the matter is, as surely the parties' teams of attorneys must realize, there is no definitive answer. Three years or five. Six-hundred-sixty-six files or four hundred files. This is where being reasonable and compromising in good faith comes in. It's not worth fighting over and it's not worth further expenditure of judicial resources, especially over several cases. As there is no definitive answer and neither side has argued convincingly for one, and they have been incapable of

9

agreeing to one, the defendant shall produce four years' worth of files, from 1986-1989.

**February 17th**

The plaintiff also asks that the City accomplish certain tasks by February 17th and provide a confirmation that it is not aware of any other responsive files. That part of the plaintiff's motion is denied. As to the February 17th deadline – which the plaintiff appears to have conjured out of thin air – the plaintiff did not file the motion to compel until February 2nd, and surely the plaintiff knew that the defendant would be allowed time to respond and, one imagines, that it would want to file a reply. Given that the dispute has been ongoing for months and is one the parties themselves were unable to resolve in all that time, surely the plaintiff must have known that the court's resolution might not be instantaneous. In other words, the plaintiff ought to have known that by the time the motion was briefed and ruled on, February 17th would be in the rear-view mirror.

After one extension – which was opposed by the plaintiff – fact discovery is set to close May 12, 2025. [Dkt. #113]. There is currently no expert discovery schedule as none was set after the extension of fact discovery. To the extent plaintiff is concerned because the expert discovery deadline set last September was June 9, 2025 [Dkt. #98], that deadline is stricken. Production of hundreds of files – files the plaintiff is demanding – naturally takes a while, and it is perhaps not so easy to estimate a completion date. There is a status hearing set for March 12, 2025; perhaps a timeline can be hashed out then.

As for the "confirmation," the City did agree to provide one in the parties' October 2024 email exchange. [Dkt. #108-2, Page 2-3 of 6]. But, according to the City's response brief – and plaintiff has not filed a reply brief challenging the City on this point [Dkt. #115] – it provided confirmation "that it produced the files CPD could locate at the time of the initial production." [Dkt.

#116, at 13-14]. That will be sufficient.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/12/25